PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 18-1942

SPARTAN CONCRETE PRODUCTS, LLC,

Appellant

v.

ARGOS USVI, CORP., f/k/a CARICEMENT USVI, CORP.

On Appeal from the District Court
of the Virgin Islands
(Civil Action No. 3-15-cv-00004)
District Judge: Honorable Curtis V. Gómez

Argued December 11, 2018
Before: CHAGARES, HARDIMAN, and RESTREPO,
*Circuit Judges*.

(Opinion Filed:  July 5, 2019)

Christopher A. Kroblin [Argued]
Kellerhals Ferguson Kroblin

9053 Estate Thomas
Royal Palms Professional Building
Suite 101
St. Thomas, VI 00802
        *Attorney for Appellant*

Howard Feller [Argued]
Nicholas J. Giles
Casey E. Lucier
McGuireWoods
800 East Canal Street
Gateway Plaza
Richmond, VA 23219
        *Attorneys for Appellee*

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

This appeal stems from a dispute over the sale of ready-mix concrete in the U.S. Virgin Islands. Appellant Spartan Concrete Products, LLC, which operated on St. Croix, sought to displace a company called Heavy Materials as the sole provider of ready-mix concrete on St. Thomas. Upon entering the St. Thomas market, Spartan started a price war with Heavy Materials that caused financial losses to Spartan while Heavy Materials retained its dominant position. After three years of fierce competition, the companies reached a truce by which they went their separate ways with Spartan agreeing to sell on St. Croix while Heavy Materials would keep selling on St. Thomas.

Following the truce, Spartan brought this lawsuit against Appellee Argos USVI, Corp., a bulk cement vendor. The crux of Spartan's case is that Argos, which supplied the cement necessary to make the ready-mix concrete, violated § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), by giving Heavy Materials a 10 percent volume discount during the price war. Spartan claimed Argos caused its losses and eventual departure from St. Thomas by offering the discount to Heavy Materials alone. The District Court disagreed and, following a bench trial, entered judgment for Argos because Spartan failed to prove it suffered antitrust injury. The Court also denied Spartan leave to amend its complaint to include two tort claims, finding undue delay and prejudice. Because Spartan failed to establish antitrust injury, and the District Court did not abuse its discretion in denying leave to amend, we will affirm both orders.

I

The relevant facts begin in 2010, when Spartan expanded its ready-mix concrete sales from St. Croix to St. Thomas and St. John. For the next three years, Spartan competed fiercely with Heavy Materials—the only other seller of ready-mix concrete on St. Thomas.

Argos was the only vendor of bulk cement on St. Thomas during this period of competition between Spartan and Heavy Materials. Argos sold cement to both companies, but gave Heavy Materials—which accounted for, on average, 77 to 80 percent of Argos's bulk sales between 2010 and 2013—a 10 percent volume discount. Spartan claims that this discount gave Heavy Materials such a competitive advantage on St. Thomas that Spartan had to cease operations there.

Spartan frequently reduced its prices to compete with Heavy Materials, which precipitated a price war between the two companies. As a result, Spartan's market share on St. Thomas rose to nearly 30 percent by the end of 2011. Spartan's former minority owner and operations manager, Rodgers Bressi, testified that Spartan started the price war with the goal of obtaining a monopoly on St. Thomas and/or St. Croix. Warren Mosler, Spartan's majority owner, planned for Spartan to incur short-term harm during the price war and "eventually recoup its losses." App. 633–34. Bressi also testified that Mosler wanted to pressure Heavy Materials to sell its business to Spartan. The owner of Heavy Materials, Doug Gurlea, testified that a pattern emerged: each time Spartan would broach "[t]he subject of purchasing [Heavy Materials's] concrete operations" and Heavy Materials declined the overtures, "[t]here would be, within days, a price decrease that . . . Spartan would initiate." App. 722.

After a few years, the price war became unsustainable, so Spartan and Heavy Materials struck a deal. In December 2013, they agreed that Spartan would withdraw from St. Thomas and Heavy Materials would stop competing on St. Croix. This arrangement was memorialized in two documents: (1) an assignment of Spartan's lease to Heavy Materials for a concrete plant on St. Thomas; and (2) a requirements supply agreement under which Spartan would purchase all of the aggregate needed to produce concrete on St. Croix from Heavy Materials, which in turn agreed "not to supply ready-mix concrete on the island of St. Croix." App. 847. So as of December 2013, each company had a monopoly on one of the islands.

Spartan incurred significant losses during the price war with Heavy Materials. Spartan's management consultant,

Michael Pede, estimated that the company's total losses during its three years of operation on St. Thomas were $3,807,587.95. Spartan argues that Argos's discount to Heavy Materials made Spartan uncompetitive on St. Thomas. During the three years of competition, cement costs accounted for 12.8 percent of Spartan's $13.2 million in costs. Because it did not receive the 10 percent discount given to Heavy Materials, Spartan incurred an additional $181,429, representing 1.4 percent of its total costs. Pede admitted that Spartan reduced its costs in several categories, such as labor, other materials, and transportation, by 5 percent. During the competitive period, Spartan also wrote off more than $345,000 in bad debts from customers.

II

In January 2015, about a year after its truce with Heavy Materials, Spartan sued Argos for engaging in price discrimination in violation of § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 2017 WL 2462824, at *1 (D.V.I. June 7, 2017).

Argos and Spartan appeared before Magistrate Judge Ruth Miller for a pretrial conference in April 2015. Judge Miller ordered the parties to propound written discovery by the end of May with initial written discovery to be completed by the beginning of October that same year. But over the next several months, the parties repeatedly missed Judge Miller's deadlines for conducting initial discovery. In December 2015, Judge Miller ordered the parties to submit a joint proposed discovery schedule the next month. The parties also missed this deadline and did not comply until February 2016. Judge Miller then entered a trial management order stating in part that all written discovery would be responded to by the end of the month and fact discovery would be completed by mid-August.

5

In July, Spartan served Argos with a second request for production of documents. Argos objected and responded one month later.

In October 2016, Spartan moved to amend its complaint to include two additional claims against Argos: intentional interference with business relations and civil conspiracy. Spartan asserted that Argos's response to the second request for production and discovery production by non-party Heavy Materials showed both Argos's intentional interference with Spartan's business relations and its conspiracy with Heavy Materials to force Spartan out of business.

In November 2016, a month after Spartan sought leave to amend, Argos also moved to amend its answer, seeking to add counterclaims against Spartan and individuals associated with Spartan for antitrust violations. It based these claims on deposition testimony suggesting that Spartan and Heavy Materials conspired to divide the ready-mix concrete market between St. Thomas and St. Croix.

In February 2017, four months after its first motion to amend, Spartan filed a second motion to amend, seeking to add to the proposed amended complaint more detailed factual allegations about the new claims. Later that same month, Judge Miller issued a Report and Recommendation recommending denial of the parties' motions to amend because both parties had exercised undue delay. Argos and Spartan filed objections to the R&R, which the District Court originally adopted after review for clear error because the District Court deemed the parties' objections untimely. On reconsideration, the District Court, applying plenary review, yet again adopted the R&R, and denied both parties' motions for leave to amend.

The District Court conducted a bench trial in July 2017. At the conclusion of Spartan's evidence, Argos moved for a directed verdict.[1] The District Court granted that motion and

---

[1] Although both Argos and the District Court referred to this motion as one for a "directed verdict," the 1991 amendments to the Federal Rules of Civil Procedure replaced the term "directed verdict" in Rule 50 with the term "judgment as a matter of law." Fed. R. Civ. P. 50(a) advisory committee's note to 1991 amendment. A judgment as a matter of law under Rule 50(a) can be granted only in jury trials, however. *See* Fed. R. Civ. P. 50(a); *Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396, 401 (3d Cir. 1999). Rule 52 governs motions for judgment made during a bench trial. Fed. R. Civ. P. 52. Here, the District Court did not make the separate findings of fact and conclusions of law required by Rule 52(a)(1). Instead, the Court assessed Spartan's evidence by applying the more favorable Rule 50(a) standard by "assuming and giving all inferences in [its] favor." App. 54. Had the District Court properly treated it as a Rule 52 motion, the Court would have "applie[d] the same standard of proof and weigh[ed] the evidence as it would [have] at the conclusion of the trial." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 (3d Cir. 2010).

We may remand the case to the district court when it fails to make factual findings under Rule 52(a). *See In re Frescati Shipping Co., Ltd.*, 718 F.3d 184, 196–97 (3d Cir. 2013)."Where the facts are largely undisputed, however, 'we need not remand if application of the correct standard could support only one conclusion.'" *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 183 (3d Cir. 2010) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 712 (3d Cir. 2004)); *see* 9C Charles Alan Wright & Arthur R. Miller,

entered judgment in favor of Argos, finding that Spartan failed to provide sufficient evidence of antitrust injury and damages. Spartan timely appealed.

## III

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1337. We have jurisdiction under 28 U.S.C. § 1291. Spartan appeals the District Court's judgment in favor of Argos and its order denying Spartan's motion to amend its

*Federal Practice and Procedure* § 2577 (3d ed. 2008) ("The appellate court will determine the appeal without further elaboration by the trial judge if the record sufficiently informs it of the basis of the district court's decision of the material issues in the case, or if the only contentions raised by the parties on appeal do not turn on findings of fact."). Here, the facts are largely undisputed, as the parties focus on whether the evidence at trial was legally sufficient to prove antitrust injury. So we will review the record "to determine whether, in light of the controlling legal principles, the facts and/or the failures in the District Court's analysis compel a result as a matter of law." *Sabinsa*, 609 F.3d at 183; *see Hsu ex rel. Hsu v. Roslyn Union Free Sch. Dist. No. 3*, 85 F.3d 839, 848 n.1, 852–53 (2d Cir. 1996) (exercising plenary review of a denial of a preliminary injunction when the district court failed to make factual findings under Rule 52(a)). As a result, our review is analogous to an appeal of summary judgment, and we will "review the record as a whole and in the light most favorable to [Spartan], drawing reasonable inferences in its favor." *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 396 (3d Cir. 2015). Although we choose in this instance not to remand, we emphasize that following the strictures of Rule 52(a) in a bench trial is the proper approach for a district court.

complaint. "We review a district court's refusal to allow a plaintiff to amend [its] complaint pursuant to Fed. R. Civ. P. 15(a) for abuse of discretion." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001). We exercise plenary review over the District Court's legal conclusions. *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010).

IV

We first consider the District Court's judgment in favor of Argos based on its finding that Spartan failed to provide sufficient evidence that it suffered antitrust injury.

Section 2(a) of the Robinson-Patman Act provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

15 U.S.C. § 13(a). To prove a violation of § 2(a), the plaintiff must show that: (1) "sales were made to two different purchasers in interstate commerce"; (2) "the product sold was of the same grade and quality"; (3) the "defendant discriminated in price as between the two purchasers"; and (4) "the discrimination had a prohibited effect on competition." *Feesers, Inc. v. Michael Foods, Inc.*, 498 F.3d 206, 212 (3d Cir. 2007). After establishing a prima facie case for a § 2(a) violation, a plaintiff must satisfy § 4 of the Clayton Act—the treble damages provision—to recover damages. *Stelwagon Mfg. Co. v. Tarmac Roofing Sys. Inc.*, 63 F.3d 1267, 1273 (3d Cir. 1995). To recover, the plaintiff must have proof of antitrust injury—"some showing of actual injury attributable to something the antitrust laws were designed to prevent." *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981).

Here, the District Court found that Spartan established the first three elements of a § 2(a) violation: "[I]t is clear that the evidence has established that there were sales that were made by Argos to two different purchasers in interstate commerce[,] . . . [t]he product sold was of the same grade and quality[,] [a]nd there was [] some discrimination, that is, Heavy Materials received a ten percent discount [while] Spartan did not." App. 54. And because the Court assumed Spartan suffered a competitive injury (the fourth element), App. 54, this appeal turns on whether Spartan satisfied the damages requirement by proving antitrust injury.

To establish antitrust injury, "a plaintiff must prove a causal connection between the price discrimination and actual damage suffered." *Stelwagon*, 63 F.3d at 1273. And "[a]lthough the proof requirements of section 4 are 'less than stringent,' there must be some *direct evidence* of injury to

10

support an award of damages." *Id.* at 1274 (citation omitted) (quoting *J.F. Feeser v. Serv-A-Portion, Inc*, 909 F.2d 1524, 1540 (3d Cir. 1990)). We have explained that the "relaxed measure of proof is afforded to the amount, not the causation of loss—the nexus between the defendant's illegal activity and the injuries suffered must be reasonably proven." *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1176 (3d Cir. 1993).

Here, the District Court assumed for the purpose of its analysis that competitive injury existed, but determined that Spartan did not produce competent evidence of a "linkage between . . . competitive injury and some antitrust injury that led to damages." App. 54–56. The Court explained that Spartan's key witness for establishing damages attributable to the price cut—Michael Pede—relied on assumptions about the business Spartan lost. When pressed for an actual measure of damages, Spartan "struggled" and pointed only to its view of a "generalized atmosphere that drove Spartan out of the marketplace." App. 56. Because there was "no basis" in the evidence "before the Court that would allow the plaintiff to recover," the District Court entered judgment in favor of Argos. App. 55–56.

Spartan argues it "proved the fact of antitrust injury through evidence that the merciless price war caused Spartan to suffer continued losses and eventually to go out of business." Spartan Br. 40. Spartan relies on the testimony of two employees (Pede and Bressi)—namely that price was an important factor in the jobs it received—to conclude that "customers chose to purchase from either Heavy Materials or Spartan primarily on the basis of price." Spartan Br. 42–43. Spartan also notes that Heavy Materials's manager (Kurt Nose) and owner (Gurlea) admitted price played a factor in the

11

market. Spartan asserts it "proved its lost sales" by presenting this testimony about price competitiveness, as well as by "showing that it competed in a two-competitor market in which there was an inverse relationship between Heavy Material's [*sic*] sales and Spartan's losses." *Id.* at 46–47.

Spartan's arguments notwithstanding, we agree with the District Court that the evidence at trial was insufficient to prove antitrust injury. Although Pede insisted Spartan lost jobs to Heavy Materials because of the price difference, he conceded that he premised his testimony on an assumption. When questioned about the basis of his testimony that 90 percent of the jobs Spartan lost were "because of the cement price difference," Pede admitted he could not point to any analysis he performed (or otherwise) to verify that assertion. App. 623. He also conceded Spartan provided no "files or documents that would show what happened in the situations where it did not obtain a job" and had no "records that would show the reasons why customers bought from Heavy Materials rather than Spartan." App. 620–21. Nor did Spartan identify or provide testimony from lost customers.

In *Stelwagon*, we deemed inadequate expert testimony that "failed to sufficiently link any decline in [Plaintiff's sales] to price discrimination" and noted that the plaintiff did not identify a single lost customer. 63 F.3d at 1275–76. We concluded that the plaintiff could not recover antitrust damages because it "failed to present any direct evidence of lost sales or profits caused by the discriminatory pricing." *Id.* at 1276. By relying on testimony of employees about the importance of price in the market and not presenting evidence of lost customers, Spartan made the same errors in establishing antitrust injury. So the District Court did not err when it found that Spartan did not provide sufficient evidence for antitrust

12

damages, as Pede's assumptions and generalized statements about price fall short of the requirement to show an "actual injury attributable to" the alleged price difference. *See J. Truett Payne*, 451 U.S. at 562.

Furthermore, the evidence at trial showed that Spartan lost sales and profits for reasons unrelated to the cement discount. Gurlea testified that Heavy Materials won "the majority of the large commercial projects" based on quality rather than price. App. 1137–38. And Pede acknowledged that Spartan lost profits because of its short-term plan of "selling concrete . . . at prices that were below its marginal cost." App. 620. Finally, Spartan lost revenue when it wrote off more than $345,000 in bad debts from customers. All of this evidence breaks the "causal connection" required for antitrust injury by suggesting that these factors—rather than price discrimination—contributed to Spartan's lost sales and profits. *See Stelwagon*, 63 F.3d at 1273.

Spartan also argues it suffered antitrust injury because the price war had a significant impact on its profits and eventually forced it to shut down. Spartan cites Pede's testimony that by 2013, Spartan "had been beaten up for a very long time" and it "could not sustain [its] operation any longer." App. 553. It further contends that "[e]limination of a business is the type of injury antitrust laws are intended to prevent." Spartan Br. 48. Thus, Spartan concludes that it "demonstrated antitrust injury in fact because it proved that the brutal price war" "fueled by" the Argos discount to Heavy Materials "caused Spartan to go out of business." *Id.*

Although it is undisputed that Argos gave Heavy Materials alone a 10 percent volume discount on concrete, Spartan has presented no evidence linking this discount to its

13

inability to compete in, and its ultimate exit from, the St. Thomas market. Indeed, Spartan was able to compete with Heavy Materials for three years. And during that time, it not only lowered its retail prices, but also began a price war in an effort to drive Heavy Materials from St. Thomas. This plan worked for a while, as Spartan took business away from Heavy Materials and achieved a nearly 30 percent share of the St. Thomas retail ready-mix concrete market. Thus, Spartan cannot show antitrust injury merely by its closure on St. Thomas, especially because it exited the market after agreeing with Heavy Materials to divide the islands.

Because Spartan did not present sufficient evidence that it suffered antitrust injury, the District Court did not err in granting judgment in favor of Argos.[2]

---

[2] Spartan also argues the District Court erred in finding that it did not present sufficient evidence on the amount of its antitrust damages, which is a separate inquiry from establishing antitrust injury. It contends that because the venture "failed due to a market distortion caused by illegal price discrimination," Spartan is entitled to recover its three years of operating losses from the failed venture, which total over $3.8 million. Spartan Br. 48. Spartan believes it deserves more than the going-concern value of the business because it "never operated in St. Thomas in a market free from illegal price discrimination." Spartan Br. 50. Spartan also claims it has suffered a loss of $181,429 "directly attributable" to "overpaying for cement" from Argos when compared to the price paid to Argos by Heavy Materials. Spartan Br. 52.

In our view, both measures of damages are legally insufficient. First, while Spartan contends its $3.8 million

V

We next consider whether the District Court abused its discretion when it denied Spartan's motion to amend its complaint to add two tort claims. Federal Rule of Civil Procedure 15(a)(2) provides a liberal standard for motions to amend: "The court should freely give leave when justice so requires." But leave to amend may be denied when there is "undue delay, bad faith, dilatory motive, prejudice, and futility." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

---

operating loss on St. Thomas was attributable to Argos's price discount, Pede conceded he merely assumed that 90 percent of Spartan's lost sales were attributable to the cement cost difference. Although Pede admitted that some sales or profits were lost for reasons unrelated to the discount, Spartan did not account for these losses in attempting to prove its damages claim. So this evidence does not provide a "reasonable estimate" of damages that is "not the product of speculation or guess work." *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 484 (3d Cir. 1998) (quoting *In re Lower Lake Erie Ore Antitrust Litig.*, 998 F.2d at 1176). Spartan's alternate argument that it should receive $181,429 in overpayment as a direct loss is likewise invalid. A plaintiff seeking damages under § 4 of the Clayton Act for a § 2(a) violation of the Robinson-Patman Act is not entitled to "'automatic damages' in the amount of the price discrimination." *J. Truett Payne*, 451 U.S. at 561. For these reasons, the District Court did not err when it found that Spartan did not provide competent evidence to measure its damages.

Undue delay is "protracted and unjustified"—it "can place a burden on the court or counterparty" or show "a lack of diligence sufficient to justify a discretionary denial of leave." *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). A district court may exercise its discretion to deny leave to amend when the movant delays completion of discovery. *See Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). We have also upheld district courts' findings of prejudice when adding a new claim would "fundamentally alter[] the proceeding and could have been asserted earlier." *Cureton*, 252 F.3d at 274.

The District Court denied both parties' motions to amend, but only Spartan appeals. Spartan moved to add two tort claims—intentional interference with prospective business relations and civil conspiracy—based on two documents: an email from Argos's General Manager explaining that the price reduction from Heavy Materials "must be kept confidential," App. 106, and another email in which an Argos executive offered Heavy Materials assistance "on getting ahead with the bidding vs[.] Spartan," App. 108.

The Court agreed with Judge Miller's R&R and found that the parties exhibited undue delay in completing discovery: "The parties simply did not conduct discovery with such diligence as would justify that prejudice and burden at this stage of the proceedings." *Spartan*, 2017 WL 2462824, at *6. The Court detailed the delay, noting that the parties repeatedly failed to meet discovery deadlines. *Id.* at *1–4. Judge Miller explained that neither party sought leave to amend "until more than one and one-half years" after the action started and "after the deadline for the completion of fact discovery." App. 19. The R&R recommended that the amendments should not be permitted because the delay would prejudice both parties, lead to more discovery, and place a "burden on the Court's ability

16

to manage its caseload." App. 20–21. The District Court reviewed the record de novo and agreed.[3]

Spartan argues the District Court abused its discretion in denying its motion to amend because there was no undue delay in its filing and the additional claims would not prejudice Argos. Both arguments are unpersuasive.

As for undue delay, Spartan emphasizes that it filed the motion just ten days after Argos's last document production (in which the key documents for its amendment were uncovered) and more than nine months before trial. Spartan also argues it should not be blamed for Argos's missteps, as Argos caused the discovery delays and did not produce the documents showing the conspiracy and interference with business until September 2016. Because it could not have amended its complaint any earlier, Spartan claims the Court erred in finding that it was unduly dilatory. In sum, Spartan contends it "should not be denied leave to amend its Complaint because its opponent refused to play by the rules." Spartan Br. 27.

Although these arguments have some superficial appeal, Spartan mischaracterizes the delay as one-sided. A thorough review of the record shows that both parties failed to

---

[3] Judge Miller also concluded that Spartan's proposed tort claims were futile because they "failed to plead sufficient facts to demonstrate its entitlement to relief." App. 15. The District Court did not address this alternate ground when it adopted the R&R. Although Argos argues the District Court did not abuse its discretion because the amendments were futile, we need not reach this issue because, as we will explain, the undue delay and prejudice to Argos suffice to affirm the Court's denial of leave to amend.

17

meet court-ordered deadlines and Spartan did not diligently seek third-party discovery despite its importance in this case. Judge Miller found that Spartan was equally responsible for the delay: "[A]lthough Spartan also relies on documents produced by . . . Heavy Materials to support its new claims, it does not appear from the record that Spartan took any action on its own to obtain information from Heavy Materials." App. 20. Spartan also stood idle while discovery deadlines passed and did not move the District Court to compel compliance from Argos. In addressing Spartan's conduct, the District Court explained that "[i]neffectually attempting to resolve disputes without court involvement for over a year while failing to comply with five of the Magistrate's discovery orders" does not strike the "appropriate balance" between self-help and court involvement in discovery issues. *Spartan*, 2017 WL 2462824, at *6. We agree.

In sum, while both parties advanced plausible arguments about the cause of the delay and whether delay should impact Spartan's motion to amend, we cannot agree that the District Court abused its discretion in denying Spartan's motion. Spartan has not shown that the Court erroneously applied the law to these facts, especially considering Spartan's substantial delay in pursuing discovery from Argos and Heavy Materials as outlined by the R&R and the District Court's opinion. And the finding of undue delay, on its own, suffices to affirm the Court's denial of Spartan's motion to amend. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

Moreover, the prejudice inherent in allowing leave to amend on this record provides another independent reason to affirm the District Court. Spartan argues the District Court abused its discretion in finding that both parties would be prejudiced by the proposed amendments. It contends that the

18

two causes of action it wishes to include "arise out of the same conduct alleged in Spartan's original Complaint—unfair competition in the St. Thomas ready-mix concrete market." Spartan Br. 22. Spartan also alleges Argos intentionally withheld the documents showing "an agreement to engage in illegal price discrimination." *Id.* at 24. In Spartan's view, Argos would suffer no prejudice, as it caused the discovery delay at issue.

Spartan's contention that its amendments would not prejudice Argos is unpersuasive because the new claims would require additional discovery. Spartan admits that its claims are based on "new, previously unknown, and unsuspected facts." Spartan Br. 15. And the tort claims (intentional interference with prospective business relations and civil conspiracy) involve new theories of recovery that would require different discovery than that related to Spartan's original antitrust claims. As found by the District Court, and indicated in the R&R, allowing amendment to pursue these new claims would likely "fundamentally alter[] the proceeding and could have been asserted earlier." *Cureton*, 252 F.3d at 274. For that additional reason, we hold that the District Court did not abuse its discretion in denying leave to amend on the basis of prejudice.

Because the District Court denied Spartan's motion for leave to amend on two independently valid grounds—undue delay and prejudice—we will affirm the Court's order.[4]

---

[4] Spartan makes two other arguments about leave to amend on appeal. First, it contends the District Court erred in adopting the R&R, which found that the unduly delayed

19

\*     \*     \*

The District Court neither erred in entering judgment in favor of Argos nor abused its discretion in denying Spartan's motion to amend its complaint. We will affirm both orders.

---

amendments would burden the "Court's ability to manage its caseload." App. 21. Spartan argues because the District Court simply "agree[d]" and did not elaborate on this purported burden, it abused its discretion. But the R&R appropriately explained the straightforward notion that a court "must balance the needs of all litigants in establishing and maintaining its schedule." App. 21. The Court did not abuse its discretion by agreeing with this assessment. Second, Spartan claims the District Court failed to review de novo Judge Miller's proposed findings and recommendations. But Spartan offers no support for its speculation. What's more, the Court explicitly recognized its obligation to conduct a de novo review and its opinion reflects an independent analysis of the R&R. So both of these arguments fail as well.