NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-2908

_____

MARK BUTTERLINE, Individually and as Administrator
of the Estate of Lisa Butterline, and on behalf of himself and
all others similarly situated,

Appellant

v.

THE BANK OF NEW YORK MELLON TRUST COMPANY,
NATIONAL ASSOCIATION, FKA The Bank of New York Trust
Company, N.A., as successor to JPMorgan Chase Bank,
N.A., as trustee for Residential Asset Mortgage Products, Inc.,
Mortgage Asset-Backed Pass-Through Certificates, Series
2005-RP1 I/P/A Bank of New York Trust, Co.; CITY OF PHILADELPHIA;
PHILADELPHIA SHERIFF'S OFFICE

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-15-cv-01429)
District Judge: Honorable Juan R. Sanchez

_____

Argued on July 7, 2020

Before: CHAGARES, SCIRICA and ROTH, <u>Circuit Judges</u>

(Opinion filed:  December 28, 2020)

Daniel C. Levin
Levin, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106

William T. Wilson          (**ARGUED**)
Bailey & Ehrenberg
120 North Church Street
Suite 206
West Chester, PA 19380

      Counsel for Appellant


Craig R. Gottlieb
Jennifer MacNaughton      (**ARGUED**)
City of Philadelphia Law Department
1515 Arch Street
Philadelphia, PA 19102

      Counsel for Appellee

_____

OPINION[*]

_____

ROTH, <u>Circuit Judge</u>

Mark and Lisa Butterline[1] sued the City of Philadelphia and the Philadelphia Sheriff's Office (collectively, the City) over the Sheriff's Office's failure to collect and distribute excess proceeds from the sale of their foreclosed property. The District Court

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Lisa Butterline died during the pendency of this appeal, and Mark Butterline was substituted as the representative of her estate in the litigation.

denied the Butterlines leave to assert their procedural due process claim on the ground that the claim was time-barred. For the reasons that follow, we will vacate the judgment of the District Court and remand the case for further proceedings.

## I.

In November 2007, the Bank of New York Mellon Trust Company filed a foreclosure action against the Butterlines, who had fallen behind on their mortgage. The foreclosure action resulted in a judgment of $62,764.79 against the Butterlines. Their home was subsequently listed for a sheriff's sale. The published notice of the sale stated that in the event there was active bidding on the property, the highest bidder would post certain costs at the time of the sale and pay the Sheriff's Office the remaining balance within 30 days of the sale. The notice also stated that the Sheriff's Office would file a schedule of distribution for the proceeds within 30 days of the sale, as required under Pennsylvania law.[2]

On November 1, 2011, after a competitive bidding process, the Bank won the sale with a bid of $93,000. The sum of the foreclosure judgment and the sheriff's costs was $79,055.90. The winning bid exceeded that amount by $13,944.10. Under Pennsylvania law, the Butterlines had five years from the time of the sale to claim the excess funds. If the funds were unclaimed, they would be retained by the Commonwealth of

---

[2] 231 Pa. Code Rule 3136(a).

Pennsylvania.[3]  However, the Sheriff's Office never collected the entire bid amount or filed a schedule of distribution.  Instead, the Butterlines' property was deeded to the Bank on July 23, 2012, after the Bank had paid only the sheriff's costs.  The deed, however, stated that the transfer of title was for the entire bid amount.  The deed was recorded on October 31, 2012.

After unsuccessfully attempting to have the sheriff's sale set aside, the Butterlines filed a claim with the Sheriff's Office's Defendant Asset Recovery Team (DART) to claim the excess funds.[4]  In its December 18, 2014 letter, denying the Butterlines' claim, DART informed the Butterlines that, whenever an executing creditor in a foreclosure wins the sale of the foreclosed property, the creditor has to pay only the sheriff's costs.  Since the Sheriff's Office never received any excess funds, the DART concluded, the Butterlines were "not due any monies" from the sale, and their case was considered closed.[5]

On March 19, 2015, the Butterlines filed a putative class action against the City under 42 U.S.C. § 1983, claiming that the City had violated their right to procedural due process by depriving them of their interest in the excess funds to which they were entitled.[6]  The Butterlines later moved to amend their complaint.  However, the District

---

[3] 72 Pa. Stat. §§ 1301.2, 1301.9; Act of July 10, 2014, P.L. 1053, No. 126, § 7 (changing the period from five to three years); *see also In re Sheriff's Excess Proceeds Litig.*, 98 A.3d 706, 713 n.2 (Pa. Commw. Ct. 2014) (noting the five-year period for former property owners to claim excess proceeds after the sale of properties formerly theirs).
[4] The DART is now called the Home Asset Recovery Team.
[5] R. 280.
[6] The Butterlines also sued the Bank, but the claim against the Bank was dismissed with prejudice and is not the subject of this appeal.

Court partially denied the motion, and, in particular, denied the Butterlines leave to renew their procedural due process claim, which previously had been dismissed without prejudice.[7]  The District Court initially observed that the Butterlines brought their suit in March 2015 and that their procedural due process claim had a two-year statute of limitations.  Since the property interest at stake was the Butterlines' "right to receive the excess proceeds from the sheriff's sale of their home," the District Court determined that their injury "would have occurred no later than when the City gave the Bank complete title to the Property without (1) requiring it to pay that portion of the purchase price representing the excess proceeds and (2) distributing those proceeds to [them]."[8]  Thus, the District Court determined that the injury would have occurred no later than October 2012, when the deed was recorded, and the statute of limitations would have expired by the time the Butterlines sued.  In addition, the District Court held that the Butterlines could not rely on the discovery rule to toll the statute of limitations because they could not show that they had acted with reasonable diligence in discovering their injury.  Having concluded that the Butterlines' procedural due process claim was untimely and not subject to tolling, the District Court denied the Butterlines leave to amend on the basis of futility.  The Butterlines appealed.

---

[7] This is in fact the Butterlines' second attempt to amend, this time through a motion to substitute their amended complaint.  The Butterlines concede there is no material difference between their procedural due process claim in their original complaint and in their later complaints.
[8] R. 438.

II.[9]

Although "[m]otions to amend under Rule 15 are typically granted liberally," a court may deny leave to amend when the amendment would be futile.[10] An amendment is futile if it could not withstand a motion to dismiss, such as on the basis of legal insufficiency or the statute of limitations.[11] We review a district court's denial of leave to amend for abuse of discretion and its determination that an amendment would be futile de novo.[12] We will find an abuse of discretion where we deem that a district court's legal conclusion regarding the futility of the amendment is erroneous.[13] In other words, we will reverse a denial of leave to amend on the basis of futility where the amendment would not in fact be futile on the ground cited by the district court. We find that to be the case here.

The statute of limitations for § 1983 claims is governed by a mix of federal and state law: Whereas the law of the state where the cause of action arose provides the

[9] The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.

[10] *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 210 (3d Cir. 2019).

[11] *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018); *Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir. 2003)

[12] *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). *See also Spartan Concrete Prod., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 112 (3d Cir. 2019).

[13] *Fallon v. Mercy Catholic Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 493–94 (3d Cir. 2017).

length of the limitations period and tolling principles,[14] federal law determines when the limitations period begins to run.[15] Here, the statute of limitations under Pennsylvania law is two years.[16] Under federal law, the statute of limitations begins to run the moment the claim accrues, namely, "when the plaintiff knew or should have known of the injury upon which its action is based," which is generally "the time of the last event necessary to complete the tort."[17]

The District Court determined that the Butterlines' procedural due process claim accrued and the statute of limitations began to run in October 2012. The court found that was the point when the Butterlines "should have known both that excess proceeds existed and that the City had not distributed any money from the sale to them."[18] That determination is erroneous. A procedural due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."[19] If there is a process that apparently provides adequate procedural remedies, a plaintiff must avail himself of that process before bringing a procedural due process claim.[20] Because the City provided the DART process, the Butterlines were required

---

[14] *Kach v. Hose*, 589 F.3d 626, 634, 639 (3d Cir. 2009) (stating that "[t]he length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose" and noting that federal tolling principles may apply "[w]here state tolling principles contradict federal law or policy").
[15] *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018).
[16] 42 Pa. Cons. Stat. Ann. § 5524; *Montanez v. Sec'y Pa. Dep't of Corrs.*, 773 F.3d 472, 480 (3d Cir. 2014).
[17] *Kach*, 589 F.3d at 634 (internal quotation marks omitted).
[18] R. 439.
[19] *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).
[20] *See id.*

7

to—and did—avail themselves of that process. It was not until the Sheriff's Office notified them in December 2014 that it had failed to collect the entire bid amount that their procedural due process claim became viable and that the statute of limitations began to run.[21] Their suit, filed about three months later, was thus timely.

Even assuming the statute of limitations had begun to run in October 2012, we conclude that the discovery rule would have tolled its running until December 18, 2014. Under Pennsylvania law, the discovery rule "tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct."[22] To invoke this rule, a plaintiff must exercise "reasonable diligence" in discovering his injury, which means he must "establish that he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others."[23] While "[t]here are very few facts which diligence cannot discover, . . . there must be "some reason to awaken inquiry and direct diligence in the channel in which it would be successful."[24]

---

[21] *Cf. Montanez*, 773 F.3d at 480 (procedural due process claim accrued within a month of funds being deducted from prisoner's account because prisoner should have known from his monthly account statement that deduction had occurred).

[22] *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 231 (3d Cir. 2003) (internal quotation marks omitted).

[23] *Kach*, 589 F.3d at 642 (quoting *Wilson v. El-Daief*, 964 A.2d 354, 362, 363 n.6 (Pa. 2009)).

[24] *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005) (alterations omitted) (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)); *see also Knopick v. Connelly*, 639 F.3d 600, 612 (3d Cir. 2011) ("Where the plaintiff has no reason to investigate, the statute will be tolled.").

"[W]hether a plaintiff has exercised reasonable diligence is generally a factual question reserved for the jury" unless "the facts are so clear that reasonable minds cannot differ as to whether the plaintiffs exercised reasonable diligence."[25]

The District Court's ruling hinged on the fact that the Butterlines could have submitted their request to the DART earlier. According to the District Court, this fact "refutes any claim that they acted with reasonable diligence and precludes the application of the discovery rule."[26] We disagree. The Butterlines were reasonably diligent, or at least reasonable minds could disagree over whether they were. The City, consistent with Pennsylvania law, announced in print that the entire winning bid amount for the sold property would be collected and the City would distribute any excess to the Butterlines, based on a schedule it would file. Although the Sheriff's Office failed to file a schedule of distribution or to distribute any excess funds to the Butterlines, the Butterlines initially attempted to have the sale set aside, were denied in that attempt, and then timely pursued their claim to the excess funds that the sale should have generated. They submitted a request to the DART before the funds would be considered abandoned and unclaimed.

The District Court acknowledged that the Butterlines' DART claim was timely but stated that the timeliness of their DART claim "does not render their procedural due

---

[25] *Mest v. Cabot Corp.*, 449 F.3d 502, 512 (3d Cir. 2006) (internal quotation marks omitted).

[26] R. 440-41. To support this holding the District Court cited a non-precedential opinion of this Court. That opinion is not binding on us, but in any event, the case is factually distinguishable from this one in that it concerned a fact that the plaintiff must have known about for more than two years before he filed his due process suit. *See Fallin v. Pennsylvania Dep't of Transportation*, 675 F. App'x 197, 198-99 (3d Cir. 2017).

process claim timely given [their] failure to exercise diligence in pursuing proceeds from the sheriff's sale."[27] We believe that the timeliness of the Butterlines' DART claim is a significant factor in determining whether they exercised reasonable diligence. A person reasonably could believe that the Sheriff's Office would abide by Pennsylvania law or at least by its own announcements, that the Sheriff's Office may have simply been slow to process the proceeds from the sale, and/or that he may pursue a claim during any point within the period allowed under applicable law. To hold that reasonable diligence indisputably required the Butterlines to have inquired earlier would alter the standard beyond what is reasonable. More importantly, it finds no support in law since the discovery rule applies when the plaintiff has no reason to believe he may have been injured. That being the case here, irrespective of the accrual date, the discovery rule would have tolled the statute of limitations on the Butterlines' procedural due process claim until December 2014 when their DART claim was denied. The Butterlines' suit thus was timely.

## III.

For the foregoing reasons, we will vacate the District Court's judgment, dismissing their claims and remand this case for further proceedings consistent with this opinion.

---

[27] R. 441 n.10.