**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2642
_____

ADMASSU REGASSA,
                    Appellant

v.

C. BRININGER; S. ARGUETA; A. KRANZEL; E. KULP; GREGORY GEORGE; LT.
SHERMAN; FRANCIS FASCIANA; DR. KEVIN PIGOS; J. OLDT; M. ERB; M.
EDINGER; A. JORDAN; N. BEAVER; B. CHAMBERS; LT. DOWKUS; LT.
CARRASQUILO; LT. SAYLOR; LT. J. SEEBA; LT. A. MILLER; OFFICER S.
BUEBENDORF; C. WISE; D. JOHNSON; J. ECK; UNITED STATES OF AMERICA

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4:14-cv-01122)
District Judge:  Honorable Matthew W. Brann

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 8, 2021

Before:  AMBRO, PORTER, and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 12, 2021)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Admassu Regassa, a federal prisoner, appeals pro se from various orders entered by the District Court in an action that he brought pursuant to Bivens[1] and the Federal Torts Claims Act (FTCA). In particular, he challenges (1) judgment entered in favor of the United States on his FTCA assault claim following a bench trial; (2) orders granting the defendants' motions for summary judgment; and (3) rulings on various pre-trial, evidentiary, and case management motions. For the following reasons, we will affirm.

On July 8, 2013, Regassa, who was confined in the special management unit, had an altercation with prison employees at USP Lewisburg. In his complaint, which he later amended, Regassa alleged that those employees threatened and assaulted him, placed him in overly tight ambulatory restraints for several days, provided him with inadequate medical care for his injuries, and violated his due process rights at a disciplinary hearing involving charges stemming from the altercation. In separate decisions issued over the course of several years, the District Court granted in part the defendants' motions for summary judgment, rejecting the majority of Regassa's claims. The District Court also denied his motions for appointment of counsel, motions to file a second amended complaint, and discovery- and evidentiary-related motions. Following a bench trial in

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

July 2020, the District Court ruled in favor of the United States on Regassa's FTCA assault claim, his sole remaining allegation. Regassa appealed.[2]

A.    Bench Trial

We begin our review with the District Court's findings of fact and conclusions of law following the non-jury trial on Regassa's FTCA assault claim. After a bench trial, "we review the District Court's factual findings, and mixed questions of law and fact, for clear error, and we review the Court's legal conclusions *de novo*." Alpha Painting & Constr. Co. Inc. v. Del. River Port Auth. of Pa. & N.J., 853 F.3d 671, 682-83 (3d Cir. 2017). Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and its liability "is generally determined by reference to state law." Molzof v. United States, 502 U.S. 301, 305 (1992). Pennsylvania law governs Regassa's assault claim. 28 U.S.C. § 1346(b)(1). Under Pennsylvania law, an "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). Notably, Bureau of Prisons (BOP) regulations authorize corrections officers to "use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff,

_____

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we may affirm on any basis supported by the record. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

3

and others, to prevent serious property damage and to ensure institution security and good order."  See 28 C.F.R. § 552.20; see also BOP Program Statement 5566.06; cf. Renk, 641 A.2d at 293 ("A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty.  In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest.  The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.").

At the trial, several corrections officers testified.  Judge Brann found their accounts "to be credible."  (ECF 339, at 10.)  According to the officers' testimony, Regassa, who was handcuffed behind his back, was being escorted from a disciplinary hearing when he abruptly spun to his left and spit on corrections officer Brininger, who was gripping the handcuffs with his right hand.  Because Regassa's movement caused officer Brininger to lose "purchase on [Regassa's] hand restraints," officer Brininger "wrapped [Regassa] up by the midsection and drove him to the floor."  (ECF 333, at 152-53; 165; 181-82, 195-95.)  At that point, other officers, including some who had witnessed the incident, arrived to assist officer Brininger.  (ECF 333, at 154.)  Regassa screamed and attempted to kick the responding officers, ignoring officer Brininger's order to stop resisting.  (ECF 333, at 153-54; 188-89.)  None of the responding officers punched, kicked, hit, or otherwise attacked Regassa.  (ECF 333, at 158, 182, 198, 210).

4

They did, however, place Regassa in restraints, which included a chain around his chest.[3] A prison lieutenant who read officer Brininger's report of the incident explained that "placing an inmate on the ground takes the inmate's ability away to break free from staff" or injure themselves. (ECF 333, at 127; 115-16; 126-27.)

A paramedic who examined Regassa shortly after the incident reported that there was no significant trauma, that Regassa's vital signs were within normal limits, and that Regassa did not appear to be in acute distress. (ECF 333, at 212-13.) Although Regassa complained of chest pain, had swelling from a laceration near his right eye, and was bleeding from his nose, those injuries did not require follow-up care. (ECF 333, at 213-15; 240-42.) Notably, at medical appointments that occurred approximately six weeks and 14 months after the incident, Regassa did not complain of any remaining injuries. (ECF 333, at 222-23; 244-46.) Regassa testified that the officers engaged in an unprovoked attack, hitting, kicking, and stomping on his back, shoulders, and head for approximately three minutes. (ECF 333, at 34-41.) But Judge Brann found Regassa's account "incredible," stating that his injuries were consistent with the officers' testimony, medical reports, and a videotape that showed officers placing Regassa in restraints.

The evidence presented at trial supports Judge Brann's conclusion that the "force [applied] was reasonably necessary to maintain control of Regassa and ensure the safety

---

[3] At trial, Judge Brann observed "clear and obvious" scarring around Regassa's torso in the shape of a chain. (ECF 333, at 109-13; ECF 339, at 7.)

of" all involved in the altercation. (ECF 339, at 14.) Regassa's sudden movements while being escorted from the disciplinary hearing threatened officer Brininger's control over him. Because a loss of control posed a threat to corrections officers and Regassa himself, officer Brininger was justified in using force. The amount force used – wrapping Regassa up by the midsection and driving him to the floor – was necessary to regain control of Regassa. Therefore, officer Brininger's actions did not constitute an assault and battery. Regassa challenges Judge Brann's judgment by asserting that the defendants submitted fraudulent records, that witnesses provided false testimony, and that the District Court was biased against him. But these claims are not in any way supported by the record. In sum, we discern no clear error in the District Court's findings of fact and no error in its legal conclusions.

B.     Summary Judgment

We next turn to the orders granting the defendants' motions for summary judgment. We exercise de novo review over orders granting summary judgment. See Bryan v. United States, 913 F.3d 356, 360-61 (3d Cir. 2019). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[w]e view the facts and draw all reasonable inferences in the non-movant's favor," we will conclude that "[a] disputed issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Resch v. Krapf's

Coaches, Inc., 785 F.3d 869, 871 n.3 (3d Cir. 2015) (citation and quotation marks omitted).

### 1. Certificate of Merit

The District Court properly granted the defendants' motion for summary judgment as to Regassa's medical negligence FTCA claim. (ECF 91 & 92.) As noted above, the FTCA requires a court to apply the tort laws of the state in which the alleged tort arose. Gould Elec. Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000). Pennsylvania law requires a plaintiff alleging medical malpractice to file a certificate of merit within 60 days of filing "any action based upon an allegation that a licensed professional deviated from an acceptable professional standard." Pa. R. Civ. P. 1042.3. The certificate must attest either that an appropriate licensed professional supplied a written statement that there exists a reasonable probability that the care provided fell outside acceptable professional standards, or that expert testimony of an appropriate licensed professional is unnecessary. Pa. R. Civ. P. 1042.3(a)(1) & (3). This requirement is a substantive rule and applies even where, as here, the claim is brought in federal court. See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011). A defendant seeking dismissal based on the failure to file a certificate of merit must serve the opposing party with a notice of its intention at least 30 days before moving for dismissal. See Pa. R. Civ. P. 1042.7(a); Schmigel v. Uchal, 800 F.3d 113, 121-24 (3d Cir. 2015).

7

Regassa did not substantially comply with the certificate of merit requirements. The defendants provided Regassa with notice of their intent to dismiss his medical negligence claim. (ECF 50-2; ECF 74-2, at 6-8.) In response, Regassa submitted two documents titled "Certificate of Merit." (ECF 56; ECF 74-2, at 10-11.) But neither of those documents stated that a licensed professional supplied the necessary statement regarding acceptable professional standards or asserted that expert testimony was unnecessary. Instead, the certificates of merit merely summarized his claims.[4] Cf. Liggon-Redding, 659 F.3d at 265 (concluding that district court abused its discretion in dismissing a malpractice claim where a plaintiff submitted an "unambiguous[]" certificate of merit "stat[ing] that she was proceeding under Pennsylvania Rule 1042.3(a)(3) by asserting that no expert testimony was needed to advance her claims").

Notably, Regassa does not argue on appeal that the defendants' notices were insufficient or that his submissions qualified as adequate certificates of merit. Instead, he asserts that a certificate of merit was not necessary because he alleged "ordinary negligence." Appellant's Br., at 4, 20 of 69. We disagree. Regassa's amended complaint clearly alleged medical malpractice claims. In Pennsylvania, medical malpractice is the "unwarranted departure from generally accepted standards of medical

---

[4] Regassa later contended that his "medical negligence claim is so simple" that it "does not require expert testimony or [a certificate of merit] for prosecution." (ECF 84, at 8 of 16.) But that passing reference, made in a brief submitted in opposition to the defendants' motion for summary judgment, is insufficient to satisfy the certificate of merit requirements.

practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003). Regassa claimed that BOP medical staff "had professional duties to treat my wounds and my injuries and to provide me proper and adequate medical care to alleviate my pain and suffering" and that those duties were breached by "neglect[ing] my urgent medical needs" by not providing "proper and adequate medical care for my pain and for my injuries." (ECF 45, at 16-17.) Thus, because Regassa brought a medical negligence claim but did not comply with the certificate of merit requirements, the District Court properly granted summary judgment to the defendants.

### 2. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials until he has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). This requirement applies to federal prisoners, like Regassa, seeking relief through a Bivens action. See Nyhuis v. Reno, 204 F.3d 65, 68-70 (3d Cir. 2000). Regassa did not meaningfully challenge the defendants' contention that he failed to exhaust his administrative remedies as to the Bivens claims based on his placement in ambulatory restraints, the assault, and the denial of medical care. He argued, instead, that he was unable to timely file administrative grievances because of the injuries that he sustained

9

during the assault and because prison officials refused to provide him with grievance forms. (ECF 71, at 8.) As the District Court explained, however, those allegations are belied by declarations from a prison doctor and prison staff. The doctor explained that Regassa's medical records indicated that he did not suffer from any medical condition between July and December 2013 that would have prevented him from filing an administrative grievance. (ECF 60-2, at 110-11.) In addition, two prison counselors stated that although Regassa had access to them several times each week, he did not request any administrative remedies forms during the relevant time period. (ECF 60-2, at 72-73, 84-85.) A unit manager further noted that Regassa did not complain about a lack of access to administrative remedy forms. (ECF 60-2, at 96-97.) Regassa did not meaningfully dispute this evidence.[5] Because no genuine issue of material facts exists as to Regassa's failure to exhaust his Bivens claims related to placement in ambulatory restraints, the assault, and the denial of medical care, we conclude the District Court properly granted summary judgment for the defendants on those claims.[6] (ECF 111 & 112; 230 & 231.)

---

[5] Although Regassa filed a Counterstatement of Material Facts and various exhibits in opposition to the defendants' claim that he failed to exhaust his administrative remedies (ECF 72 & 73), we conclude that that material – which often consisted of conclusory averments and handwritten reproductions of allegedly official Bureau of Prisons documents – was insufficient to create a genuine issue for trial. See Fed. R. Civ. Pro. 56(e); Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981).

[6] The District Court also granted summary judgment in favor of the defendants with respect to Bivens claims that were raised against them in their official capacities, Bivens

10

### 3. Remaining Bivens and FTCA Claims

We also agree with the entry of summary judgment in favor of the defendants on Regassa's remaining claims. Regassa's Bivens claim that a disciplinary hearing officer violated his due process rights fails because the sanctions imposed – 60 days of disciplinary segregation and loss of commissary, telephone, and visitation privileges – do not amount to an atypical and significant hardship. (ECF 111, at 16-21 of 22); see Sandin v. Conner, 515 U.S. 472, 484 (1995); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (holding that seven months in disciplinary segregation is insufficient to trigger a due process violation). Moreover, the undisputed affidavits submitted by correctional officers Wise and Buebendorf demonstrate that they had no personal involvement in the assault. (ECF 200, at 5-8); (ECF 181-1, at 25-26, 41-42); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (stating that respondeat superior cannot form the basis of a Bivens claim).

In addition, the undisputed record refutes Regassa's FTCA assault and negligence claims that were based on his placement in ambulatory restraints.[7] (ECF 200, at 10-13 of

_____

claims brought against defendants who had no personal involvement in the alleged constitutional violations, and unsupported claims of conspiracy. (ECF 43 & 44.) We note that Regassa did not identify that decision in his notice of appeal, see Fed. R. App. P. 3(c)(1)(B), or challenge it on appeal. See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020) (holding that claims were forfeited where appellant failed to raise them in her opening brief).

[7] Bureau of Prisons policy defines ambulatory restraints as "approved soft and hard restraint equipment which allow the inmate to eat, drink, and take care of basic human

17.) A declaration submitted by a prison lieutenant indicated that, after the acting warden authorized the use of ambulatory restraints, correctional officers searched Regassa, dressed him in new clothes, and placed him in the restraints. A video provided by the defendants supported this account. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The footage showed several correctional officers holding Regassa as he was placed in restraints. No officer used unreasonable force. Then, a member of the medical staff checked the restraints before Regassa was moved to a cell. Although Regassa remained in the restraints for approximately 43 hours, throughout that period prison officials observed that Regassa was agitated, displayed poor self-control, and had attempted to free himself from the restraints. (ECF 181, at 9-13.) Written records indicated that Regassa denied experiencing pain during regular periodic evaluations that were conducted in accordance with BOP policy. (ECF 181, at 9-13.) A member of the prison medical staff stated in a declaration that Regassa's circulation and vital signs were normal during the evaluations. Based on these undisputed facts, we agree that the application and continued use of the restraints did not constitute an assault or amount to negligence. See Renk, 641 A.2d at 293; Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005) ("A claim for

---

needs without staff intervention." BOP Program Statement 5566.06

negligence under Pennsylvania law contains four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.").

C.      Pre-Trial Motions

Regassa challenges the District Court's denial of his motions for appointment of counsel, motions to file a second amended complaint, and discovery- and evidentiary-related motions.  We review those denials for abuse of discretion.  See Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997) (counsel motion denial); Winer Fam. Tr. v. Queen, 503 F.3d 319, 325 (3d Cir. 2007) (denial of motion to amend complaint); Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010) (discovery order rulings); Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 412 (3d Cir. 2002) (evidentiary rulings).

We agree that appointment of counsel was not warranted because Regassa had demonstrated an ability to present his case and because the issues involved were not particularly complex.  See Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993).  In addition, the District Court did not abuse its discretion in denying Regassa's motions to file a second amended complaint, which sought to add a claim and a defendant, as well as reassert claims that had already been rejected.  Those motions were filed after the parties

13

had conducted discovery and after the District Court had granted summary judgment as to some of Regassa's claims. See Spartan Concrete Prods., LLC v. Argos USVI, Corp., 929 F.3d 107, 115-16 (3d Cir. 2019) (explaining that undue delay may justify denial of leave to amend). We also discern no abuse of discretion in the District Court's discovery and evidentiary rulings. Regassa failed to explain why the appointment of a medical expert would have assisted the District Court. See Young v. Martin, 801 F.3d 172, 185 (3d Cir. 2015). He also did not provide any sound basis for overturning the District Court's rulings on the parties' motions in limine. The evidence that Regassa sought to exclude – an incident report, restraint check reports, medical reports, and the video – was clearly relevant. See Fed. R. Evid. 401 and 402. In addition, the District Court properly excluded over 20 potential witnesses that Regassa sought to have testify, as those individuals either had no personal knowledge or would have provided only cumulative accounts of the relevant events. See Fed. R. Evid. 403.

For the foregoing reasons, we will affirm the judgment of the District Court.

14